**Mark SHOOK and Dennis Jones, on behalf of themselves and all others similarly situated, Plaintiffs, and**

**James Vaughn and Shirlen Mosby, Intervenor Plaintiffs,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF EL PASO and Terry Maketa, in his official capacity as Sheriff of El Paso County, Defendant.**

Civ.A. No. 02–M–651.

United States District Court,
D. Colorado.

July 29, 2003.

Mark Silverstein, American Civil Liberties Union of Colorado, Thomas S. Nichols, Davis, Graham & Stubbs LLP, Denver, CO, David Cyrus Fathi, ACLU Foundation, National Prison Project, Washington, DC, for plaintiffs.

Jay Allen Lauer, County Attorney's Office, Sara A. Ludke, Vaughan & DeMuro, Colorado Springs, CO, for defendant.

## ORDER DENYING CLASS CERTIFICATION AND DENYING MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

MATSCH, Senior District Judge.

On April 2, 2002, the American Civil Liberties Union Foundation of Colorado and the National Prison Project of the ACLU Foundation, Inc. filed a class action complaint for injunctive and declaratory relief naming Mark Shook, James Robillard and Dennis Jones as class representatives and alleging that prisoners in the El Paso County Jail facilities with "serious mental health needs" have been and are subject to actions and omissions by jail personnel that result in systemic violations of rights protected by the Eighth and Fourteenth Amendments to the United States Constitution. James Robillard moved to withdraw from the case on June 7, 2002. The court ordered his dismissal on December 3, 2002. The plaintiffs filed a motion to certify the class on April 2, 2002, seeking certification of the following plaintiff class:

> All persons with serious mental health needs who are now, or in the future will be, confined in the El Paso County Jail.

The defendants filed a response in opposition to the motion to certify the class on May 13, 2002, and on the same date filed a motion to dismiss or, in the alternative, for summary judgment. The defendants' motion seeks

dismissal for failure to exhaust administrative remedies as required by that portion of the Prison Litigation Reform Act of 1995 ("PLRA") that is now codified in 42 U.S.C. § 1997e(a).

On July 26, 2002, Shirlen Mosby and James Vaughn moved to intervene as plaintiffs and joined in the motion to certify the class. The court entered an order for supplemental briefing on the applicability of the limitations on court ordered relief enacted in the PLRA and now codified in 18 U.S.C. § 3626. Those briefs were filed. Oral argument on all motions was heard on January 15, 2003.

■ The factual allegations concerning the experiences of the named plaintiffs and interveners are sufficient to support claims that they had been diagnosed as having serious mental health needs which were not met when they were in El Paso County jail facilities because the personnel in charge of the prisoners acted or failed to act with deliberate indifference to those serious mental health needs. The Supreme Court established the law in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) that such deliberate indifference is a violation of the Eighth Amendment prohibiting cruel and unusual punishments, made applicable to state and local officials under the Fourteenth Amendment. They have made additional allegations of affirmative actions by jail personnel in the use of excessive force. Thus, these named litigants have individual claims that are actionable under 42 U.S.C. § 1983 within the jurisdiction provided by 28 U.S.C. § 1343(a)(3).

Both legal and equitable relief are available under 42 U.S.C. § 1983 against individuals whose conduct is violative of these constitutional protections and from the governmental units if the violations result from established policies and practices. None of the plaintiffs has sought damages.

This court's ability to order prospective relief by mandatory and prohibitory injunctions has been limited by the PLRA in 18 U.S.C. § 3626. Specifically, § 3626(a)(1)(A) reads as follows:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

This statutory restriction is a limitation on jurisdiction. It does not prohibit the procedural device of class certification under Fed. R.Civ.P. 23(b) to determine the existence and extent of violations of the protections of the Constitution. *Anderson v. Garner*, 22 F.Supp.2d 1379 (N.D.Ga.1997). In that case, the court granted a motion for class certification for claims that state correctional officers used excessive force during "shakedowns" at state prisons, identifying the class as

All inmates housed in Georgia Department of Corrections facilities who will be subjected to future shakedowns led by Defendants Garner and/or Thomas, their successors, and their agents and assigns.

The court then ordered additional briefing on the question of whether the named plaintiffs had standing to litigate the merits of the claim by showing that they would be subject to such conduct in the future. There are no published additional proceedings for that case. The court's docket sheets show settlement.

Class certification depends upon finding the prerequisites in Rule 23(a) of (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of the representative parties to protect the interests of the class. Each of those requirements is in dispute in this case.

■ In determining motions for class certification, the court must accept the allegations of the complaints as true and refrain from anticipating a ruling on the merits of the claims. Accepting these factual allegations as constituting deliberate indifference

to the serious mental health needs of the plaintiffs and intervenors, the considerations controlling the motion for class certification are whether the named plaintiffs and interveners have standing to assert the claims made on behalf of the putative class, whether the members of the class can be identified, whether the class allegations are broader than the constitutional claim, whether the putative class is manageable and, whether the court has the authority to order the prospective remedy requested.

The plaintiffs allege the following:

The needs of mentally ill prisoners include diagnosis of their condition, timely provision of proper treatment and medication by competent staff, safe and appropriate housing, and protection from inhumane and punitive actions taken out of ignorance of or indifference to their mental state.

In responding to the defendants' motion to dismiss or for summary judgment based on the failure to exhaust administrative remedies, the plaintiffs observe that there is no grievance procedure available to prisoners in the El Paso County Jail to address a systemic failure to provide adequate facilities, train staff and provide adequate care for prisoners' serious mental health needs. They attached a psychiatrist's affidavit giving his opinion that persons with bipolar disorder may require the full range of mental health services including medication, psychotherapy, crisis intervention, prevention of self-harm and suicide and sometimes they must be placed in restraints. He further opined that such persons require supervision by a staff trained to recognize the symptoms of mental illness and to distinguish those symptoms from willful misbehavior. He further stated that each person with bipolar disorder is unique and reacts differently to different medications. Finally, he expressed the belief that the majority of mentally ill prisoners could not negotiate the multi-step El Paso County Jail grievance system.

In responding to the defendants' opposition to class certification, the plaintiffs identified the following questions of fact said to be common:

- Whether there are a sufficient number of competent and adequately-trained men-

tal health staff at the jail to deal with the serious mental health needs of prisoners;

- Whether the defendants have in place adequate procedures to ensure that the medical provider complies with its contract and delivers the medical and mental health services specified therein;

- Whether the jail can safely and humanely protect prisoners who become suicidal;

- Whether the defendants are able to ensure that all prisoners who require inpatient psychiatric care are able to receive it in a timely fashion;

- Whether there is a sufficient number of security staff adequately trained to respond appropriately to the needs of prisoners with serious mental health needs;

- Whether security staff rather than medical staff or mental health staff make the decision to place suicidal or mentally ill prisoners in restraints;

- Whether security staff respond with inappropriate use of force to behavior that is caused by prisoners' mental illness;

- Whether the jail has an inadequate system for ensuring that the proper medications are delivered in the proper doses at the appropriate time to the appropriate prisoners;

- Whether the jail has an inadequate system for monitoring the effects of psychotropic medications that are delivered to prisoners with serious mental health needs;

- Whether the jail has an inadequate system for assuring continuity of care for prisoners with serious mental health needs who are recent arrivals or who are being released.

Plaintiffs' counsel have also submitted an opinion from a professor in the medical school of Yale University about requirements for the humane treatment of persons with serious mental health needs.

It is apparent from the plaintiffs' papers that this civil action is an effort to reform jail practices rather than to redress past constitutional torts and prevent their reoccurrence. The initial problem in this case is the identifi-

cation of members of the class. As the plaintiffs and intervenors have observed, more than one thousand persons are housed in the El Paso County Jail facilities at any one time. National statistics suggest that approximately 20% of the prison population in the United States are persons with mental health needs. Jail populations are inherently fluid and the time in custody varies greatly. The El Paso County Jail houses persons who have just been arrested and may be released on bail or dismissed charges or transferred to other institutions within hours of their detention. The inmate population includes pre-trial detainees and prisoners sentenced to confinement for less than two years or are awaiting transfer to Colorado Department of Corrections facilities. The identification of members of the class in this case necessarily would require an intake diagnostic procedure to determine persons having serious mental health needs. To find deliberate indifference to serious mental health needs there must be an awareness by the custodial authority that a prisoner has such needs. The named plaintiffs and interveners had prescriptions for medications which, by their nature, indicate the existence of mental health problems. There is nothing in the Constitution that requires the Sheriff of El Paso County to hire a competent professional staff to screen all persons coming to the jail to determine their mental and emotional status.

The plaintiffs make much of the facts that there have been suicides by prisoners in the El Paso County Jail and there are now pending in this court cases seeking damages for such suicide. Liability in those cases will depend upon a factual showing that there was some basis for a belief that the inmate was at risk for reasons other than custodial confinement. This court is not aware of any case that imposes liability for suicide or any other injury to an inmate because the jailers did not provide a mental health evaluation by a competent professional to determine mental health needs in advance of incarceration.

The law of liability for deliberate indifference to mental health needs of prisoners is not different from that regarding a failure to provide care for physical problems. There is no constitutional requirement that every person taken into custody be given a full physical examination to determine the existence of any such medical problems. Many such medical needs are not identifiable by obvious signs and symptoms and may not be known to the person in custody. Whether an Eighth Amendment violation has occurred is a question for a jury after a trial on historical evidence following appropriate instructions on the law. In determining that question, the jurors are the arbiters of the defendants' conduct and, in effect, make the law for the case in the same manner that the jury in a common law negligence case decide what a reasonable person would or would not do in the same or similar circumstances.

The objective of this proposed class action is to have this court prescribe jail practices for humane treatment of prisoners. That is beyond the competence and the jurisdiction of this court. The questions sought to be addressed and answered are policy determinations to be made by the political branches of local and state government. The evident purpose of the PLRA was to emphasize the functional difference between the judiciary and the agencies of representative government. The limitations on remedy established by the PLRA would preclude this court from replicating *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980).

The plaintiffs' recitation of common fact questions quoted above illustrate the failure to demonstrate the feasibility of class relief in this case. The prevention of deliberate indifference to substantial mental health needs of prisoners does not equate with establishing "adequate" and "appropriate" measures determined by a court relying on expert witnesses.

The breadth of the relief sought in this case is far wider than those cases preventing the use of restraint boards or other specific types of excessive force. That breadth makes the proposed class action not manageable with this court's limited jurisdiction.

■ The defendants' motion to dismiss or for summary judgment based on a failure to exhaust administrative remedies is denied because there is no available administrative remedy which the plaintiffs and intervenors could have used for relief.

Upon the foregoing, it is

ORDERED that the plaintiffs' and intervenors' motion for class certification is denied. The defendants' motion to dismiss or for summary judgment is denied and the plaintiffs and intervenors have 30 days to file an amended complaint for individual remedies.